UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CNP MECHANICAL, INC.,

                          Plaintiff,          04-CV-6593

            v.                                **DECISION
                                              and ORDER**

CHRISTOPHER ALUND, DALE STANLEY,
BRIAN ROBISON, TIMOTHY HOAK, and
PATRICK DANIEU

                          Defendants.

_____

## INTRODUCTION

     Plaintiff CNP Mechanical, Inc., ("CNP"), brings this action
against defendants Christopher Alund ("Alund"), Dale Stanley
("Stanley"), Brian Robison ("Robison"), Timothy Hoak ("Hoak") and
Patrick Danieu ("Danieu") (collectively "defendants") pursuant to
42 U.S.C. § 1983 claiming that its civil rights have been violated
by the defendants.[1] Specifically, CNP contends that its right to
due process and equal protection of the laws has been violated in
connection with an action brought by the Department of Labor
("DOL") against CNP to enforce New York State's prevailing wage
law. The Complaint also alleges violations of the Constitution of
the State of New York. In particular, CNP claims it has been denied
earned contract funds and has been deprived of liberty and property
interests protected by the New York State Constitution. Further,
CNP alleges that the activities of Hoak and Danieu implicate the

_____

[1] This is the second case filed by CNP in this Court and the third, counting an Article 78 proceeding in state court, as a result of a New York State Department of Labor administrative proceeding brought against CNP. Both this Court and the New York Supreme Court dismissed the earlier cases.

Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962 and 18 U.S.C. § 1951.

By motion dated May 31, 2005, defendants moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiff opposed the motion to dismiss on July 27, 2005. When the motion to dismiss was filed, there was also a pending separate proceeding concerning related Prevailing Wage Law violations brought in New York State Supreme Court, Monroe County, pursuant to Article 78 of the Civil Practice Law and Rules of the State of New York.[2] The Commissioner's determination was on Appeal to the New York State Appellate Division during this period. Accordingly, the pending motion before this Court brought by defendants for dismissal of the plaintiff's complaint was stayed on January 3, 2006 pending the final determination of the Article 78 proceeding. On July 13, 2006, the Appellate Division of the New York Supreme Court, Third Department ("Appellate Division") substantially affirmed the Commissioner's determination which found that classifying the disputed work as that of a plumber, as opposed to a building laborer, was not arbitrary and capricious. CNP subsequently filed

---

[2]CNP contends that it pays certain of its employees who perform pipe laying work as "Building Laborers," and that this practice is acceptable, known, and sanctioned by the DOL. Nevertheless, CNP contends that Hoak charged CNP with underpaying wages for three audited projects. Although Hoak initially charged CNP with underpaying wages on grounds that he believed an employee of CNP actually earned much less in wages than his pay records revealed, Hoak (after CNP protested the audits) revised his findings, and based the alleged underpayments on the claim that CNP's employees had been improperly paid as "Building Laborers" when they should have been paid as "Plumbers." The Hearing Officer determined that certain work classified as "building laborer" by CNP should have been classified as "plumber," thus resulting in underpayments since the plumber rate is higher than the laborer rate. The DOL issued a final determination and order adopting the Hearing Officer's report and recommendation. Accordingly, the Article 78 proceeding challenging the determination ensued.

a Motion for Leave to Appeal to the New York State Court of Appeals, which was denied. Thus, the Appellate Division's determination is now final and the motion before this Court is ripe for determination.

CNP concedes that to the extent that the Complaint alleges that the DOL's work classification was unconstitutional, these arguments are now foreclosed by the final decision of the Appellate Division. However, CNP contends that insofar as the Complaint is based upon allegations of unlawful abuse of their investigative and regulatory powers by defendants, it is unaffected by the decision of the Appellate Division.

## **BACKGROUND**

Plaintiff CNP is a commercial plumber whose work in New York is "comprised almost exclusively of public works contracts." See Complaint at ¶10. The DOL's Bureau of Public Works ("Bureau") commenced its investigation of CNP's compliance with Labor Law Article 8 in 2000, after a former CNP employee complained that CNP paid him only $11 per hour, which is less than any "prevailing rate" under Article 8.[3] See id. at ¶13. Based on this information, between November 30, 2001 and January 7, 2002, the Bureau wrongly published audit reports and Notices of Labor Law Inspection Findings ("Notices") asserting that CNP owed employees over

---

[3] Article 8, Labor Law §§ 220-223, requires contractors on public works to pay at least "the prevailing rate of wages" for a specific trade.

$765,000. See id. at ¶ 25. However, as soon as CNP complained, the Bureau immediately reviewed the erroneous audits, corrected its assumptions, and informed CNP's school district clients that the notices were being withdrawn and replaced by new Notices claiming underpayments in a lesser amount. See id. at ¶29.

After withdrawal of the initial audits, the DOL's main focus centered around the Prevailing Wage Law violations by CNP, namely payment at a laborer's rate for pipelaying and demolition work, which the Bureau contended, should have been paid at a significantly higher plumber's rate as published on the DOL wage schedules. In its Complaint (as well as in the three prior proceedings), CNP claims that the Bureau's classification of the work as payable at a plumber's wage was belied by the published wage schedules, and was "dreamed up" by a hostile labor union, Local Union No. 13 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ("Local 13"). See id. at ¶15. However, the Appellate Division has since held that the subject work performed by CNP employees constituted plumber's work.

CNP also contends that most of the claims the Bureau has advanced against it have been either fraudulent or baseless. See id. at ¶ 45. Moreover, CNP alleges that the Bureau has caused school districts to withhold earned contract funds from CNP from February 2002. See id. According to the Complaint, the Bureau has also damaged CNP's reputation with its municipal customers and

4

construction managers and architects who serve them. See id. Further, CNP alleges that Local 13 (although they have not been sued) is engaged in a campaign against CNP, and "[u]pon information and belief," the defendants acted to help Local 13. See Defs. Br. at 5. Defendants contend that CNP made substantially the same claims in three earlier proceedings, namely CNP's First Complaint in Federal Court in March 2002,[4] CNP's State Complaint filed in July 2002[5] and the DOL Administrative Proceeding.[6] See id. at 6-7.

The current Complaint makes the following specific allegations concerning the five defendants. With respect to Alund, CNP alleges that other defendants' conduct was "endorsed by ... Alund, or was the direct result of policies and procedures adopted for the Bureau by ... Alund." See Complaint at ¶47. As to Stanley and Robison, the Complaint alleges that they agreed or acquiesced that Hoak would retain responsibility for CNP investigations after Hoak's transfer from Rochester to Buffalo. See id. at ¶¶18, 20. Moreover, CNP

---

[4]The First Complaint alleged that DOL actions concerning CNP "were irrational and wholly arbitrary, and were committed willfully, and without lawful purpose" and that DOL officials violated CNP's constitutional rights. See Ex. A. to Declaration of Seth Kupferberg ("Kupferberg Dec. at Ex."). In a 2003 Decision and Order, this Court dismissed the First Complaint without prejudice pending the conclusion of the State administrative proceedings. See Kupferberg Dec. at Ex. B. This Court further indicated that CNP "failed to submit any evidence that Hoak acted to further the interests of a local union .... [T]he only evidence submitted by plaintiff is the plaintiff's 'information and belief.'" See id.

[5]This Complaint sought to prohibit the DOL and its officials "from further attempting to withhold contract funds from [CNP] on the basis of any retroactive amendment or disregard of [DOL's] published wage schedules," contending that the Bureau's attempt to enforce a plumber's wage was a retroactive amendment and an excess of the DOL's authority. See Kupferberg Dec. at Ex. C. This Complaint was dismissed without prejudice based on completion of the Administrative Proceeding.

[6]In this proceeding, CNP argued that the Bureau's allegation that a plumber's rate was proper was an excuse for the Bureau to achieve its real objective "to punish and intimidate a non-union business." See Defs. Br. at 12.

contends that both defendants failed to discipline Hoak, "endorsed Hoak's plan" to apply the plumber's rather than the laborer's rate, gave him "additional time to make a case that CNP had falsified its payroll records," and approved the Administrative Proceeding See id. at ¶¶ 29-31, 34, 38.

With respect to Hoak, the Complaint states "[B]etween November 30, 2001 and January 7, 2002 Hoak, at [Local 13's] urging and by agreement with Danieu," issued the Notices which estimated that CNP had underpaid over $765,000 allegedly, knowing that these Notices "were false ..., would likely cause the affected schools to suspend payment" to CNP, and "might cause CNP to be disqualified from obtaining new public work contracts." Id. at ¶¶25-26. The Complaint further alleges that Hoak approved or participated in the Administrative Proceeding and in responding to the directives of his supervisors, solicited the assistance of Local 13, which gathered several former CNP employees, who along with Local 13 and Hoak, devised false claims that CNP had improperly failed to pay its employees. See id. ¶¶ 31, 35, 38.

As to Danieu, the Complaint alleges that he assigned Hoak to investigate CNP after receiving the initial complaint against CNP, which "[u]pon information and belief, [Local 13], Danieu or both" assisted a former CNP employee prepare, "with actual or constructive knowledge of its falsity." See id. at ¶¶ 13-14. Further, CNP claims that Danieu directed Hoak to obtain information from Local 13 and later Danieu directed Hoak to begin other

investigations of CNP and agreed to the initial audits even though he "knew the audit reports ... were false, ... would likely cause the affected schools to suspend payment," and might cause the disqualification of CNP from getting new public work contracts. See id. at ¶¶15, 20, 25-26. In addition, Danieu, approved the Administrative Proceeding. See Id. at ¶¶ 31, 34, 38.

## **DISCUSSION**

### I.   **Motion To Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of the complaint where the plaintiff has failed to state a claim upon which relief can be granted. When evaluating a Rule 12(b)(6) motion, the court must ascertain, after presuming all factual allegations in the pleading to be true and viewing them in the light most favorable to the plaintiff, whether or not the plaintiff has stated any valid ground for relief. See Ferran v. Town of Nassau, 11 F.3d 21, 22 (2nd Cir. 1993), cert. denied, 513 U.S. 1014, 115 S.Ct. 572 (1994). The court may grant a Rule 12(b)(6) motion only where "`it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

CNP contends that on a motion to dismiss, the sufficiency of the complaint must be measured against the requirements of Fed. R. Civ. P. 8(a)(2). See CNP's Br. at 1-2. Rule 8 requires, among other

things, that the plaintiff file a short and plain statement of claim showing that the pleader is entitled to relief. <u>See</u> <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506, 512-513 (2002). Further, Rule 8(e)(1) of the Federal Rules of Civil Procedure provides that "[e]ach averment of a pleading shall be simple, concise, and direct." <u>See</u> Fed. R. Civ. P. 8(e)(1). However, as defendants correctly point out, this does not mean that a complaint can exclude all "specifics of what defendants supposedly did wrong - as CNP's Complaint does when it states conclusory claims rather than factual allegations."[7] <u>See</u> Defs. Reply Br. at 5.

## II.  <u>Abstention Doctrine</u>

Under the <u>Rooker-Feldman</u> abstention doctrine, plaintiffs are barred from asking "federal courts of first instance to review and reverse unfavorable state-court judgments." <u>See</u> <u>Exxon Mobil Corp.</u> <u>v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 283 (2005). This doctrine involves "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." <u>See</u> <u>Exxon</u>, 544 U.S. at 284. Here, the Administrative Ruling, which was upheld by the Appellate Division  is not being challenged by CNP in this action.[8]

---

[7]Defendants point to ¶¶43 and 44 of CNP's complaint arguing that at best they contain conclusory claims and not factual allegations. Paragraphs 43 and 44 made no specific allegations of false testimony and attributed delay in completing the hearing not to defendants but "to the substantial unavailability of the Bureau's counsel and the [DOL's] Hearing Officer.

[8]The motion to dismiss filed by defendants was stayed pending the final determination of the Article 78 proceeding in state court.

Indeed, CNP concedes that so much of the Complaint that alleges that the DOL's work classifications were unconstitutionally made is now foreclosed by the final determination of the Appellate Division. Thus, abstention in this case is not applicable under the Rooker-Feldman doctrine.[9]

### III. **Collateral Estoppel**

Defendants contend that this Court's 2003 Decision and Order dismissing the First Complaint without prejudice pending the conclusion of the Article 78 Proceeding in State court precludes CNP's current Complaint under the doctrine of collateral estoppel. See Defs. Br. at 19.[10] According to defendants, this Court's 2003 decision found it premature to raise claims which are central to the current Complaint as long as the Article 78 Proceeding remained pending, a ruling that CNP may not relitigate here. See id. at 20. CNP argues that any claim of preclusion on the grounds that there were prior court actions, is explained by the fact that both Federal and State dismissals were without prejudice to CNP's advancement of its claims at a more appropriate time. Further, CNP contends that the issues in the State proceeding were limited[11] and

---

[9]Pullman abstention, Burford abstention and Younger abstention are all also inapplicable since the factors warranting this doctrine have not been met: the state law is clear and there is no longer an ongoing administrative proceeding which implicates the important State interest of enforcing its statutory prevailing wages laws and resolution of the federal issues does not depend on the interpretation of state law. See Greater N.Y. Metro Food Council v. McGuire, 6 F.3d 75, 77 (2d Cir. 1993).

[10]Defendants claim that the First Complaint alleged lack of a basis for the Administrative Proceeding and improper motive on the part of the DOL officials, which are claims substantially identical to those in the current Complaint. See id.

[11]The issues that the State proceeding examined were defendants' underpayment claims against CNP and whether their accusations of willfulness and falsification, were supportable. See id. at 13.

that in any event, CNP's "Plumber" versus "Laborer" grievance only deals with part of the basis of its claims in this federal case. <u>See</u> CNP's Br. at 14. In addition, CNP argues that even if it is ultimately determined that defendants' classification rules were not applied in an unconstitutional manner, plaintiffs's other allegations of unconstitutional deprivation of rights will remain. <u>See</u> <u>id.</u>

Collateral estoppel bars relitigation of an issue of law or fact that was raised, litigated, and decided in a prior proceeding between the parties, if the determination of that issue was essential to the judgment, regardless of whether or not the two proceedings are based on the same claim. <u>See</u> <u>N.L.R.B. v United Tech. Corp.</u>, 706 F.2d 1254, 1260 (2d Cir. 1983). Moreover, Article 78 Proceedings in New York State courts do not give rise to <u>res judicata</u> considerations, rather, they are preclusive only as to such issues as they actually and necessarily decide. <u>See</u> <u>DiBlasio v. Novello</u>, 344 F.3d 292, 296 (2d Cir. 2003), <u>see</u> <u>also</u> <u>Parker v. Blauvelt Volunteer Fire Co., Inc.</u>, 93 NY2d 343, 482 (1999). Here, the 2003 Decision and Order mainly concluded that CNP was not entitled to an injunction against the Commissioner's Administrative Proceedings. Accordingly, this Court dismissed, without prejudice the initial complaint. A few months later, the State Supreme Court, like the Federal Court before it, held that CNP was required to exhaust its administrative remedies before the Commissioner before

seeking any review of the Commissioner's actions in State Court. Therefore, that petition was also dismissed without prejudice.

With respect to the Article 78 Proceeding, the Appellate Division substantially confirmed the Commissioner's determination and found that the Commissioner's decision classifying the disputed work as that of a plumber, as opposed to a building laborer, was not arbitrary and capricious. However, the State proceeding did not determine whether CNP's claims that its rights to substantive and procedural due process were violated by defendants. In addition, there still remains CNP's claim that it was unlawfully singled out for punitive treatment by the defendants in contrast to others who were similarly situated and it still remains to be decided whether defendants Hoak and Danieu violated CNP's rights under the RICO statute. Accordingly, CNP is not barred in this action by the doctrine of collateral estoppel from raising the issues of a breach of substantive due process rights, deprivation of federally protected liberty and property interest and violation of equal protection as well as RICO claims.

## IV.  **Substantive Due Process Claim**

The due process clause "was intended to prevent government 'from abusing [its] power or employing it as an instrument of oppression.'" See DeShaney v. Winnebago County Dep't of Social Serv., 489 U.S. 189, 196 (1989) (quoting Davidson v. Cannon, 474 U.S. 344, 348 (1986). The substantive component of the due process clause protects individuals from encroachments on their liberty by

outrageous government actions, "regardless of the fairness of the procedures used to implement them." <u>See</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986). The Supreme Court has cautioned, however, that it "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this uncharted area are scarce and open-ended." <u>See</u> <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 125 (1992).

In order for CNP to maintain a substantive due process claim, it must demonstrate that the government actor's actions were "arbitrary, or conscience-shocking, in a constitutional sense." <u>Id.</u> at 128. Substantive due process does not provide protection against state actions that are merely "'incorrect or ill-advised.'" <u>See</u> <u>Lowrance v. Achtyl</u>, 20 F.3d 529, 537 (2d Cir.1994) (citation omitted). Accordingly, most claims sounding in tort do not constitute substantive due process violations. Indeed, even intentional torts by government actors are not actionable as substantive due process violations unless they are "arbitrary and discriminatory" or "shock the conscience." <u>See</u> <u>Interport Pilots Agency, Inc. v. Sammis</u>, 14 F.3d 133, 144 (2d Cir. 1994).

Based on the above standards, CNP's allegations of poor enforcement of state prevailing wage law, failure to discipline its employees including Hoak and Danieu, causing school districts to withhold earned contract funds from CNP from February 2002 and damaging CNP's reputation with its municipal customers and construction managers and architects who serve them, does not state

a claim for breach of substantive due process. In addition, the Appellate Division found in its decision that "given the evidence [it could not] say that [Commissioner's] determination that the subject work constituted plumber's work was *irrational or unsupported by substantial evidence*." (emphasis added) See CNP Mechanical, Inc. v. Angello, 31 A.D.3d 925, 928 (3d Dept. 2006) Based on CNP's allegations in its Complaint, CNP has not alleged the type of oppression to support a substantive due process claim. See Interport Pilots Agency, 14 F.3d at (agency's attempt to regulate harbor pilots, although erroneous, was not arbitrary or irrational). Thus, defendants' motion to dismiss plaintiff's substantive due process claim is granted.

## V.    **Procedural Due Process Claim**

The Fourteenth Amendment's guarantee of "due process of law" is applicable only where a state deprives an individual of a constitutionally protected "liberty" or "property" interest. See Board of Regents v. Roth, 408 U.S. 564, 569 (1972). If no such interest is implicated, then no process is due the afflicted individual. See id. at 569-70. On the other hand, if the state deprives a person of a protected interest, the state must provide such procedures as the circumstances demand. See Mathews v. Eldridge, 424 U.S. 319, 333-334 (1976) (the fundamental requirement of due process is simply "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

CNP claims that defendants falsely accused plaintiff of willfully failing to pay its employees the prevailing wages mandated by state law and that plaintiff falsified its payrolls. See CNP Br. at 8. In addition, the complaint alleges that as a result of defendants' statements, CNP suffered the withholding of earned contract funds without interest, has incurred substantial debt and has lost its bonding capacity and continues to be threatened with formal debarment from further public work in New York State. See id. CNP claims that these allegations are sufficient to implicate a liberty interest under the "stigma plus" analysis enunciated by Velez v. Levy, 401 F.3d 75 (2d Cir. 2005). In Velez, the Second Circuit held that a claim is sufficiently stated if the complaint alleges a statement made about the plaintiff that is injurious to its reputation and is capable of being proved false, and that plaintiff has suffered "some tangible and material state-imposed burden ... in addition to the stigmatizing statement." Id. at 87. The Velez case is distinguishable from the present case. The basis for the plaintiff's claim in Velez was not that she had to defend an administrative proceeding, but that she was actually wrongly removed from office after fellow board members "made, and sought to publicize in local news sources, highly stigmatizing statements that explicitly requested her removal." See Velez, 401 F.3d at 90.

Plaintiff also relies on General Elec. Co. v. New York State Dept. of Labor, 936 F2d 1448, 1453 (2d Cir. 1991) for the

proposition that timely payment made under a contract with a state agency is a property interest. See CNP Br. at 7. However, the claim upheld in the General Elec. case was not that the DOL officials raised unwarranted claims or did not begin an administrative hearing in a timely fashion. Rather the claims dealt with collusion between unions and employers, which the DOL as a matter of procedure never scrutinized thus preventing the proper prevailing rate used by the DOL from being applied based on the statute. See 936 F.2d at 1458-59. Further, as this Court recognized in its 2003 Decision and Order, New York law does not entitle a public works contractor "to full payment for work performed until it demonstrates that it has paid the prevailing wage." See 2003 Decision and Order at 4-5.

In addition, to the extent that a contractor may be said to have a protected interest in being paid for its work, the administrative process provided by state law, which creates the protected interest itself, provides the protection. See S&D Maintenance Co. v. Goldin, 844 F.2d 962, 969-70 (2d Cir. 1988); see also Lujan v. G&G Fire Sprinklers, Inc., 532 U.S. 189, 197-98 (2001) (rejecting California public works contractor's attempt to enforce claim to payment through a federal constitutional lawsuit). Moreover, in this case, after CNP brought its claim before the Hearing Officer, followed by the Commissioner's determination, an Article 78 proceeding was then filed and the Appellate Division substantially affirmed the Commissioner's determination that

defendants actions were not arbitrary and capricious in finding that the disputed work was properly classified as that of a plumber, as opposed to a building laborer. Thus, CNP's claim of a procedural due process violation is dismissed.

### VI.   **The Equal Protection Claim**

CNP alleges that defendants singled out CNP and treated it differently when compared to their treatment of other similarly situated contractors for reasons that lacked any reasonable basis. See CNP Br. at 9. Further, CNP claims that defendants singled out CNP for mistreatment due to unlawful intent and bad motives in order to advance Local 13's interest in putting CNP out of business. See id. Defendants argue that CNP had not identified any similarly situated contractor who was treated differently and even if CNP did identify another contractor, showing that other contractors underpaid employees without being caught could not establish a constitutional violation. See Defs. Br. at 18.

With respect to the Equal Protection Clause, when there is no suspect classification such as race involved, the action "need only be rationally related to a legitimate [legislative] interest in order to pass constitutional muster." See United States v. Edwards, 960 F.2d 278, 283-84 (2d Cir. 1992). Further, when economic legislation is at issue, the Equal Protection Clause allows the States wide latitude. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985). Here, in essence, the Complaint criticizes the DOL and Bureau officials for proceeding with

16

investigating CNP, going forward with the Administrative Proceeding and for the Bureau's erroneous but quickly corrected assumption that CNP underpaid workers $11 per hour.

CNP's equal protection claim fails because it has not identified other similarly situated contractors treated differently, it has provided no adequate basis of comparison between other contractors for the allegedly different treatment it received from the defendants and that the DOL has wide latitude in this situation. See Cleburne, 473 U.S. at 440; see also LaTriests Rest. and Cabaret, Inc. v. Village of Port Chester, 40 F.3d 587 , 590 (2d Cir. 1994) (an adequate basis of comparison was provided by defendant village's different treatment of the same establishment before and after it was switched to a topless cabaret format). Further, the State had a rationally related and legitimate legislative interest in determining whether CNP was paying its employees the Laborer rate or the Plumber rate pursuant to New York State's prevailing wage law under Labor Law 220 et seq. See Edwards, 960 F.2d at 283-84. Therefore, CNP's equal protection claim fails.

**VII.** **Count V of CNP's Complaint**

**A.** **The Hobbs Act ("Anti-Extortion") Claim**

Defendants move to dismiss CNP's Hobbs Act claim (18 U.S.C. § 1951) for failure to state a cause of action. They argue that the factual allegations of the Complaint do not support CNP's claim. See Defs. Br. at 22. In addition, defendants contend that the

Complaint does not allege that either Hoak or Danieu sought or received any property. See id. Rather, the Complaint alleges that the defendants improperly acted "as an accommodation to" Local 13, "out of malice, ill will and within [un]lawful purpose of driving a successful non-union contractor out of business." See Complaint at ¶¶ 18, 25, 55. In any event, the defendants claim that CNP has failed in numerous ways to meet the pleading requirements for a Hobbs Act claim. CNP claims that all that is required under the anti-extortion statute is that plaintiff allege that the defendants, "under color of official right," either "attempt" or "conspire" to obtain property from the plaintiff. See CNP Br. at 17. CNP also contends that defendants attempted to bring about a transfer of plaintiff's property either to himself or to another, and this was accomplished by Hoak and Danieu when they attempted to extort CNP into agreeing to pay substantial sums to the DOL through a deliberate abuse of the power delegated to them as employees of the Bureau. See id. at 18. This is, at best, an imaginative argument and a misapplication of the law.

The Hobbs Act, 18 U.S.C. § 1951 provides in pertinent part:

(a)   Whoever in any way or degree obstructs, delays or affects commerce ... by ... extortion or attempts or conspires so to do shall be fined under this title or imprisoned[.]

(b)   As used in this section –

...

(2)   The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear or under color of official right.

18

Hoak and Danieu did not commit extortion within the Hobbs Act's meaning because they did not "obtain" property from CNP. The Supreme Court has recognized that the "obtaining" requirement entails both a deprivation and acquisition of property. See United States v. Enmons, 410 U.S. 396, 406 n. 16 (1973). Indeed, in Scheidler v. Nat'l Organization For Women, 537 U.S. 393, 394 (2003) the Court held that even when the defendants' acts of interference and disruption achieved their ultimate goal of shutting an abortion clinic, such acts did not constitute extortion because defendants did not "obtain" plaintiffs' property. See Scheidler, 537 U.S. at 394. The Court further stated that defendants neither pursued nor received "something of value from" plaintiffs that they could exercise, transfer or sell. See id. Accordingly, the court noted that to conclude that defendants' actions constituted extortion would effectively discard the statutory "obtaining" requirement and eliminate the recognized distinction between extortion and the separate crime of coercion. See id.

Here, the Complaint's factual allegations do not support the claim that Hoak and Danieu had as a goal "extortion" in violation of 18 U.S.C. § 1951. Hoak and Danieu's actions are more similar to an attempt "to deprive [plaintiffs] of their alleged property right of exclusive control of their business assets" which was found insufficient for an extortion claim in Scheidler. See Scheidler, 537 U.S. at 405. CNP further argues that extortion can mean forced transfer of property to people other than the extorter similar to

the union members in <u>United States v. Green</u>, 350 U.S. 415 (1956);
and that  inducing CNP to pay money "'for the benefit of certain of
plaintiff's employees and of the state itself'" could constitute
extortion. <u>See</u> CNP's Br. at 18. <u>Green</u>, however, did not involve
payments for the benefit of employees, but the use of "proscribed
means to exact 'wage' payments ... for 'imposed, unwanted,
superfluous and fictitious services.'" <u>See</u> <u>Enmons</u>, 410 U.S. at 400.
Further, in the <u>Enmons</u> case, the Court noted that the use even of
proscribed means to achieve higher wages for actual employees, a
potentially legitimate end, is different, and is not deemed
racketeering. <u>See</u>  410 U.S. at 400-406. Thus, a dispute over what
Labor Law §220 required, even if accompanied by "fraudulent audits,
notices of labor law inspection findings and withholding notices,"
(<u>see</u> Complaint at ¶¶ 65-68) is far closer to a dispute over the
wage to be paid for work performed similar to <u>Enmons</u>, than to
extortion of payment for work not performed, as in <u>Green</u>. The facts
and the underlying claims in this case simply do not support a
claim of extortion under the Hobbs Act.[12]

**B.   Civil RICO 18 U.S.C. § 1962**

In order to state a claim for civil damages under RICO, a
plaintiff must allege all of the following elements: (1) the
defendant (2) through commission of two or more acts (3)
constituting a "pattern" (4) of "racketeering activity" (5)

---

[12]Because the Hobbs Act is a criminal statute, it must be strictly construed, and any ambiguity must be
resolved in favor of lenity. See <u>Enmons</u>, 410 U.S. at 411

directly or indirectly invests in, or maintains an interest in, or participates in the conduct of the affairs of (or conspires to do any of these acts) (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. See 18 U.S.C. § 1961 et seq. Accordingly, in order to state a prima facie RICO case, a plaintiff must first allege a "pattern of racketeering activity". "Racketeering activity" requires a "predicate act", i.e. an act of criminal conduct identified in 18 U.S.C. § 1961(1), such as extortion.  A "pattern" requires at least two acts which must amount to or constitute a threat of continuing racketeering activity.  U.S. v. Private Sanitation Indus. Assoc., 793 F.Supp. 1114 (E.D.N.Y. 1992); H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989).

CNP claims that the "racketeering activity" of which Hoak and Danieu are accused includes their numerous efforts to have CNP pay money to the DOL sufficient to cover the underpayments that were claimed. See CNP Br. at 19. In the Article 78 proceeding, the Appellate Division found that the first set of audits was unsupported by a "shred of evidence." See CNP Mechanical, Inc. v. Angello, 31 A.D.3d 925, 928 (3d Dept. 2006). In addition, the Court noted that this initial investigatory period was unreasonably delayed by a "wage investigator who interviewed not one employee (other than the complaining one) and who knew that [CNP's] own payroll records and cancelled checks utterly contradicted this worker's claims." See id. at 928-29. Accordingly, the Court

concluded that the quality and unfairness that predominated the investigatory period was clear. See id. at 929.  The Appellate Division findings however, could not be deemed a finding of a predicate act, i.e. extortion by Hoak or Danieu. Consistent with my findings above under the Hobbs Act, the factual allegations of CNP's Complaint do not support the claim of "extortion." Thus, I find that CNP has not sufficiently alleged a predicate act of extortion for purposes of supporting its RICO claim.

Assuming however, that CNP alleged extortion, the issue then becomes whether CNP sufficiently alleged a "pattern" through commission of two or more acts by Hoak and Danieu within the meaning of the RICO statute. To establish the "continuity of racketeering activity, or its threat," a plaintiff must allege either an open-ended pattern (past criminal conduct together with a threat of future criminal conduct) ... or a closed-ended pattern (past criminal conduct extending over a substantial period of time). See H.J. Inc., 492 U.S. at 241; GIGC Capital Corp. v. Tech. Fin. Group Inc., 67 F.3d 463, 466 (2d Cir. 1995).

The Appellate Division found that almost two years elapsed between the initial complaint of a former employee in February 2000 and the issuance of the first set of audits on January 7, 2002. See CNP Mechanical, 31 A.D.3d at 928. However, in applying the RICO requirement that past criminal conduct must extend over a "substantial period of time," the Second Circuit "has never found a closed-ended pattern where the predicate acts spanned fewer than

two years." See First Capital Asset Mgt., Inc. v. Satinwood, Inc., 385 F.3d 159, 181 (2d Cir. 2004); See also Nundy v. Prudential-Bache Securities, Inc., 762 F.Supp. 40, 44 (W.D.N.Y. 1991) (An alleged "discrete, short-lived ... scheme involving at most, only two perpetrators and one victim ... neither amounts to, nor constitutes a threat of continuous racketeering activity"). I find that CNP has failed to plead facts sufficient to satisfy either an open-ended pattern of past criminal conduct coupled with a threat of future criminal conduct or a closed-ended pattern of past criminal conduct extending over a substantial period of time. See GIGC, 67 F.3d at 466.

## **CONCLUSION**[13]

For the reasons set forth above, I grant defendants' motion to dismiss plaintiff's Complaint in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.


                              s/Michael A. Telesca
                           MICHAEL A. TELESCA
                        United States District Judge

Dated:    Rochester, New York
          November 15, 2007

---

[13]Count IV of CNP's Complaint alleging deprivation of rights under the New York Constitution in breach of New York common law is also dismissed in the absence of a viable federal claim to create pendent jurisdiction. Defendants' claims of immunity also need not be addressed since they are moot given that CNP's complaint has been dismissed in its entirety. Further, the complaint against Alund is dismissed since the Complaint does not identify any specific wrongdoing by him.